## TREAT HARDWARE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4524. Promulgated April 7, 1927.

1. Loss on demolition of portion of building can not be allowed where the cost of the building or the demolished parts is not shown.

2. Deduction for repairs in connection with capital alterations determined.

*Paul R. Clay, Esq.*, for the petitioner.
*J. E. Marshall, Esq.*, for the respondent.

The deficiency letter dated April 1, 1925, which is the basis of this proceeding, asserted deficiencies in income and profits taxes for the year 1919 in the amount of $5,479.04, and for the year 1920 in the amount of $5,517.98. The petition alleged a number of errors on the part of the Commissioner respecting both the years 1919 and 1920. Some of these have been abandoned, and others have been settled by stipulation which will be made effective upon final redetermination.

The only issues presented to the Board for consideration are whether (1) the petitioner is entitled to a loss of $8,400, resulting from a partial demolition of a building, and (2) a deduction of $12,248.77 for repairs, etc., to the same building. The petitioner's contentions in these respects refer only to the year 1920.

### FINDINGS OF FACT.

The petitioner is engaged in conducting a general hardware store, and for more than 20 years prior to 1919 had been a tenant in a building situated at the corner of Broadway and Essex Streets in the City of Lawrence, Mass. This building was a four-story brick building, 100 feet front on Essex Street and 70 feet in depth. Prior to August, 1919, the petitioner had occupied part of the basement, all of the first floor, except the corner room occupied by a bank, about one-third of the second floor, and a portion of the third floor. Other tenants had occupied portions of the second and third floors and there was a skating rink and hall on the fourth floor,

In August, 1919, the petitioner purchased this building, and soon thereafter made preparations for and did, during the year 1920, complete changes and modifications in said building, consisting of a general rearrangement of the first floor of the building; adding an extension on the rear; cutting out a portion of the rear wall and extending the wall to the line; taking out the main stairways to the second and third floors; removing most of the partitions which represented the old office partitions of the second floor; removing two office partitions and a storeroom on the second floor; putting in a new elevator and pent house; rearranging the fire escape; straightening up the under side of the third floor with trusses; putting in new windows along the second-story front, and the store fronts on the first floor; and general rearrangement of store fixtures, with some new fixtures; rearranging the steam heating plant; painting the building inside and out; in fact, a general remodeling of the building to adapt it for the new layout. Thereafter, the petitioner occupied the entire building, except a portion used by the bank.

The petitioner paid the sum of $135,000 for this property, including land and building. The amount of this purchase price covered the entire property and there was no allocation of the total amount as between land and building.

In October, 1919, prior to the making of any changes, an experienced contractor and builder estimated the old building to have a then sound value of $108,250. The same contractor had charge of the remodeling of the building and estimated its sound value after the completion of the alterations to be $164,103.

During the years 1919 and 1920, in connection with the changes and modifications of said building, the petitioner paid for labor, material, etc., the sum of $66,290.06. After the changes had been completed in the year 1920, the petitioner spread upon its books of account the amount of $64,244.47, charged to capital and expense as follows:

| | |
|---|---:|
| Building | $26, 020. 19 |
| Building fixtures | 6, 590. 51 |
| Store fixtures | 10, 985. 00 |
| Capital loss | 8, 400. 00 |
| Repair expense | 12, 248. 77 |

In making its income-tax return for the year 1920, the petitioner claimed deductions of $8,400 loss resulting from the demolition of portions of the building herein described, and $12,248.77 as repair expense in connection with the same business. Both of these items were disallowed by the Commissioner.

The sum of disbursements properly designated as repairs is $6,238.19.

OPINION.

TRUSSELL: The record of this case contains the testimony of the treasurer of the petitioner corporation, the architect in charge of the remodeling of the building, the contractor who did the work, and a person engaged in real estate and insurance, all of whom testified in detail in respect of the depreciated values of portions of the old building demolished and removed and the items of cost which have been classified as repairs. Among the items of cost classified as repairs appear such items as relocating old steam pipes and radiators; cleaning and painting those portions of the interior of the building which were not changed; lumber and other supplies used in making changes in store and building fixtures; painting the outside of the building, and other labor in connection with work not classified as new construction. The aggregate of these items as specifically set forth in the testimony is $6,238.19, and we have, therefore, found that for the year 1920 the petitioner may deduct from gross income on account of repairs $6,238.19.

Claim for the deduction of a loss on account of the demolition of portions of the building is surrounded with difficulties. The record shows that the contractor who did this work found the depreciated values of portions of the old building demolished in classifications as follows: Front alterations and stairways to third floor, $2,800; rear stairways, $350; 3,282 square feet of lath and plaster partitions, $1,650; 1,432 square feet of black walnut paneling in ceiling, $2,864; partition sheathing, $868; three toilets, $500; electric wiring, $500; back hall removed, 35,000 bricks at $60 per thousand, $2,100; fire escape, $250; total, $11,882. The total of these items, however, was not used by the petitioner, either in making entries upon its books or in its claim for a deductible loss, and it apparently reduced the total of these items in the sum of $8,400. The record does not show what items were either omitted or reduced, or why. It may perhaps be assumed that the contractor, in making his statement of depreciated values of portions of the old building demolished, had in mind either the original cost of such items or the cost of such items new at the time of the demolition. Neither of these bases, however, is applicable under the circumstances of this case for the reason that the petitioner purchased this old building, and we are not advised as to what was the allocable portion of the purchase price applicable to the building and are, therefore, unable to determine what may have been the cost to the petitioner of the items demolished. And, although the record is silent respecting any salvage from the demolished portions of the building, like recoverable lumber from partitions and stairways, bricks from the rear wall, etc., which may have entered into and become a part of the new construction, the Board can not overlook the facts of

common knowledge that such salvage is practically always present under like conditions. It also appears from the record that the petitioner is claiming the right to charge off, not a portion of the cost of the old building, but a portion of the cost of alterations. We are, therefore, of the opinion that the deduction of the $8,400 claimed was properly disallowed and that the entire cost of alterations, less the amount herein allowed as repairs, should have been or should now be, capitalized so that this amount may be recovered by future depreciation deductions.

> *The deficiencies will be redetermined in accordance with the stipulation in the record and the foregoing findings of fact and opinion upon 15 days' notice, pursuant to Rule 50, and judgment will be entered in due course.*